This case involves the interpretation and application of a zoning ordinance enacted by the City of Anniston. Service Realty and Insurance Company appeals from an order by the Circuit Court of Calhoun County permanently enjoining it from using a house on its property as a real estate office.
On March 24, 1977, Service Realty purchased a 70' by 190' lot on the corner of 15th Street and Christine Avenue in Anniston. The 190' side of the lot faces 15th Street the 70' side fronts Christine Avenue. The only structure on the parcel when Service Realty purchased it was a house at the end of the lot facing Christine. At that time the property was zoned "Residential, Industrial Professional" ("R.I.P."), a zoning classification which allowed Service Realty to use the property for its real estate and insurance business. Service Realty constructed an office building facing 15th Street behind the house and it rented the house to an individual for use as a residence.
On June 13, 1978, the City changed the zoning classification of the property from "R.I.P." to "R-3". Anniston Ord. 78-0-27. Operation of real estate and insurance offices was not a conforming use under the "R-3" classification. Under the new ordinance Service Realty's office building could not be enlarged and it could not be rebuilt if destroyed. Nor could Service Realty convert the house into an office.
Service Realty and other property owners who had bought their property in anticipation of commercial use and development in accordance with the "R.I.P." classification complained to the city council about the rezoning. On November 14, 1978, the City amended the new zoning ordinance at the behest of Service Realty and the other objecting property owners. Subsection (e), Ordinance No. 78-0-49. The amendment, a copy of which is attached to this opinion as Appendix A, provided that a property owner who purchases land with the intention of using it or developing it under the provisions of an existing zoning ordinance will not be prevented by a subsequent rezoning of the property from using or developing the property as the owner had intended, if the owner files application with the City requesting to use or develop the property under the prior zoning classification within one year of the time the property is rezoned. *Page 1174 
Upon the landowner's application the city building inspector was to issue an affidavit describing: "the existing use or structure, or use or structure to be developed, the property by metes and bounds, the zone within which the use or structure or property was located prior to the [rezoning], the applicable district regulations in effect prior to the [rezoning], the date of the [rezoning] and the date of the affidavit request." Upon receipt of the affidavit the property owner was required to file the affidavit in the probate office and to provide a certified copy of the recorded document to the city building inspector.
On May 15, 1979, Service Realty made an application to the City pursuant to subsection (e). The record does not contain a copy of the application. In response to Service Realty's request the City furnished it a document entitled "Zoning Ordinance Non-Conforming Use Affidavit." The record does not reveal when the putative affidavit was executed by the building inspector or when it was provided to Service Realty. Service Realty filed the affidavit with the judge of probate on December 28, 1979.
In August of 1983 Service Realty notified its tenant in the house on Christine Avenue that it intended to convert the house into a real estate office. When it began work on the project, several property owners in the neighborhood filed an action in the circuit court seeking to enjoin Service Realty from converting the residence into an office.
Following a trial on the merits, the circuit court enjoined Service Realty from using the house for any use inconsistent with the "R-3" zoning classification. It found that the document entitled "Zoning Ordinance Non-Conforming Use Affidavit" was "neither in form nor in substance an affidavit." The court pointed out that the affidavit did not show on its face "that it was ever sworn to before a person authorized to administer an oath" and that the language of the document indicated that it was nothing more than an "unsworn declaration." The court noted that the affidavit contained no indication that Service Realty ever intended to convert the house from a residence to an office. It reasoned that the purpose of the filing requirement in the ordinance was to put the public on notice as to the owner's intentions with regard to its use and development of the property. Since the ordinance required the landowner to file the affidavit in the probate court but did not provide a specific time limitation for filing, the trial court concluded that the affidavit should have been filed within a "reasonable time." Since the affidavit was not filed until December 1979, the court concluded that it was not filed within a reasonable time. Finally, the court found that converting the house from a residence to an office would "have a substantial impact on the residential quality of the plaintiffs' neighborhood."
The proper inquiry in this case is whether Service Realty complied with the requirements of ordinance No. 78-0-49 (e). The only requirements imposed by the ordinance on the property owner were that it file a timely request for an affidavit from the building inspector, that it file the affidavit in the probate court, and that it file a recorded copy of the affidavit in the city inspector's office. The trial court did not rule against Service Realty because of a failure to make a timely application or to properly file the affidavit. The trial court based its decision on a highly technical construction of the term "affidavit," on Service Realty's supposedly dilatory filing of the affidavit, and on a finding that the development would have undesirable effects on the neighborhood.
The ordinance should be construed so as to carry out the intent of the city council. Long v. Talladega National Bank,236 Ala. 366, 368, 182 So. 14, 15 (1938). It is apparent that in passing Ordinance No. 78-0-49 the city council intended to provide a means whereby Service Realty and similarly situated landowners could continue to use their property as if it had not been rezoned from "R.I.P." to "R-3," by making an application for an affidavit and by filing the affidavit in the probate *Page 1175 
court and in the building inspector's office. Service Realty complied with the ordinance by making a timely application for an affidavit. Service Realty should not be denied the benefit of the ordinance because of a technical construction of the term "affidavit." If the affidavit was deficient in form, it was not the defendant's fault. The document was prepared by the City. Moreover, even though the city council used the term "affidavit" in the ordinance, we do not believe that the city council intended for the "affidavit" to be sworn to by the city building inspector as a prerequisite to its validity. The ordinance contemplates that the "affidavit" was to be executed by the building inspector based on representations made by the property owner. The representations include a statement as to the property owner's subjective intentions regarding future development of the property. Those are hardly the sort of facts that the city building inspector could attest to. Since the facts contained in the affidavit were not within the building inspector's firsthand knowledge, he could not properly have attested to them. The intent of the body which enacted the legislation "should not be defeated by a narrow construction based upon nice distinctions in the meaning of the words."League of Women Voters v. Renfro, 292 Ala. 128, 131,290 So.2d 167, 169 (1974).
Nor does the record support the trial court's conclusion that the affidavit was not timely filed. The ordinance does not contain a time limitation for filing the document. Although we have no quarrel with a requirement that the landowner must file the document within a reasonable time, there is no way to determine whether Service Realty was dilatory in filing the affidavit. The affidavit does not contain a date indicating when it was executed by the inspector or delivered to Service Realty. From all that appears in the record, Service Realty may have filed the affidavit immediately upon receiving it. Moreover, even if the defendant did wait an "unreasonable" length of time before filing, there is nothing to indicate that the plaintiffs were harmed by the delay.
We appreciate the concerns of the plaintiffs and the trial court regarding the effects of commercial development in the plaintiffs' neighborhood. It would not be appropriate, however, to allow the injunction to stand based on the trial court's finding "that should the residential structure in issue be converted to a commercial one, such would have a substantial impact on the residential quality of the plaintiffs' neighborhood." The courts will ordinarily allow property owners to use their property in any manner consistent with the applicable zoning ordinances so long as the owner does not permit a nuisance or a health hazard to exist. Davis v. City ofMobile, 245 Ala. 80, 83, 16 So.2d 1, 3 (1943). In this case the landowner's use of the property for commercial purposes clearly will not constitute a nuisance or a health hazard. The defendant's plan is to use the structure without external modification and without placing a sign on the property facing Christine Avenue which might affect the residential character of the neighborhood. The question whether commercial development should be allowed in this neighborhood is one for the city council, not the courts, and the city council determined that Service Realty and similarly situated landowners should be allowed the opportunity to develop their property in accordance with the "R.I.P." zoning classification when it passed Ordinance No. 78-0-49 (e).
The trial court's decision is hereby reversed and the case is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
 Appendix A "e. If an owner has secured a use or structure or property with the intention of developing a use or structure, or operating an existing use or structure, under the provisions of this ordinance prior to an amendment which restricts or prohibits the proposed development or operation of the use or structure or property, *Page 1176 
the proposed use or structure may be developed and operated or the existing use or structure may continue to operate under the provisions of the ordinance in effect prior to the amendment provided that within a period of one year following such amendment the owner of such use or structure or property requests an affidavit from the Building Inspector of the City of Anniston describing: the existing use or structure, or use or structure to be developed, the property by metes and bounds, the zone within which the use or structure or property was located prior to the amendment, the applicable district regulations in effect prior to the amendment; the date of the amendment; and the date of the affidavit request. Following the issuance of the affidavit by the Building Inspector, the owner of the use or structure or property shall file such affidavit with the office of the Probate Judge of Calhoun County, Alabama. A certified copy of the recorded document shall be furnished by the owner of the use or structure to the Building Inspector of the City of Anniston for inclusion in the records of the Building Inspector's office.
 "Evidence of the date of property purchase or the date of commencement of the use or structure under the provisions of the ordinance prior to amendment shall be furnished to the Building Inspector by the owner prior to the issuance of an affidavit.
 "If new construction is proposed on the property, which entails the demolition of an existing structure, or structures, or the development of a use or structure on vacant property, the construction must be initiated within ten years following the issuance of the affidavit by the Building Inspector.
 "An existing use or structure in operation prior to an amendment may be expanded under the provisions of the ordinance in effect prior to the change at any future time following the issuance and proper recording of the above-described affidavit.
 "In the event that a use or structure for which an affidavit has been granted is discontinued as a non-conforming use and operated as a conforming use for a period of one year, the use or structure shall conform to all applicable provisions of the amended ordinance.
 "In the event that a use or structure for which an affidavit has been granted is damaged by fire, explosion, act of God or the public enemy to any extent, the use or structure may be restored in conformity with the provisions of the ordinance described in the affidavit, or restored in formity with the provisions of the ordinance in effect at the time of repair.
 "Immediately after an amendment of this ordinance, the City Clerk of the city of Anniston shall notify all owners of nonconforming uses or structures that their uses or structures are not in conformance with this ordinance and advising such owners of their right to secure an affidavit from the building inspector within a period of one year following the date of the amendment."